# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DEBORAH A. AMILPAS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | **SA-09-CV-0389 XR (NN)** |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:    Honorable Xavier Rodriguez**
**        United States District Judge**

### Introduction

Plaintiff Deborah Amilpas brought this action for judicial review of the final decision of

the Commissioner of the Social Security Administration (the Commissioner), determining that

Amilpas is not disabled for the purposes of the Social Security Act (the Act) and denying

Amilpas's applications for Disability Income Benefits and Supplemental Security Insurance.

Amilpas asked the district court to reverse the Commissioner's decision and to render judgment

in her favor.  In the alternative, Amilpas asked the district court to reverse the decision and

remand the case for further proceedings.

After considering Amilpas's brief in support of her complaint,[1] the brief in support of the

---

[1]Docket entry # 12.

Commissioner's decision,[2] the record of the SSA proceedings, the pleadings on file, the

applicable case authority and relevant statutory and regulatory provisions, and the entire record in

this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C.

§ 636(b) and this district's general order, dated July 17, 1981, referring for disposition by

recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the

plaintiff's application for benefits.[3]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as

provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Amilpas exhausted her administrative remedies prior to

filing this action in federal court.  Amilpas applied for disability benefits on November 30, 2006,

alleging disability beginning on June 1, 2006.[4]  Amilpas associated no particular event with her

alleged onset date.  The Commissioner denied the applications initially and on reconsideration.[5]

Amilpas then asked for a hearing before an ALJ.[6]  An ALJ held a hearing on July 1, 2008.[7]  The

---

[2]Docket entry # 14.

[3]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[4]SSA record, pp. 82 & 90.

[5]*Id*. at pp. 21-24, 34 & 38.

[6]*Id*. at p. 54.

[7]*See* supplemental SSA record.

ALJ issued a decision on August 18, 2008, concluding that Amilpas is not disabled within the meaning of the Act.[8]  Amilpas asked the Appeals Council to review the decision.[9]  On February 12, 2009, the Appeals Council declined to review the decision, determining no reason existed for a review.[10]  The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g).  After receiving permission to proceed in forma pauperis, Amilpas filed this action on May 19, 2009 seeking review of the Commissioner's decision.[11]

## Issue Presented

Is the ALJ's decision that Amilpas is not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

## Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[12]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

---

[8]*Id*. at p. 7.

[9]*Id*. at p. 6.

[10]*Id*. at p. 2.

[11]Docket entry # 3.

[12]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

reasonable mind might accept as adequate to support a conclusion."[13]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[14]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[15]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[16]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[17]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[18]

### 1. Entitlement to Benefits

---

[13] *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[14] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[15] *Martinez*, 64 F.3d at 173.

[16] *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[17] *Martinez*, 64 F.3d at 174.

[18] *Id.*

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[19]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[20]  A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[21]

### 2. Evaluation Process and Burden of Proof

The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[22]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[23]

The first step involves determining whether the claimant is currently engaged in

---

[19]42 U.S.C. § 1382(a)(1) & (2).

[20]42 U.S.C. § 1382c(a)(3)(A).

[21]42 U.S.C. § 1382c(a)(3)(B).

[22]20 C.F.R. §§ 404.1520 and 416.920.

[23]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

5

substantial gainful activity.[24]  If so, the claimant will be found not disabled regardless of her

medical condition or her age, education, or work experience.[25]  The second step involves

determining whether the claimant's impairment is severe.[26]  If it is not severe, the claimant is

deemed not disabled.[27]  In the third step, the Commissioner compares the severe impairment with

those on a list of specific impairments.[28]  If it meets or equals a listed impairment, the claimant is

deemed disabled without considering her age, education, or work experience.[29]  If the impairment

is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional

capacity and the demands of her past work.[30]  If the claimant is still able to do her past work, the

claimant is not disabled.[31]  If the claimant cannot perform her past work, the Commissioner

moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities,

age, education, and work experience, to do other work.[32]  If the claimant cannot do other work,

she will be found disabled.  The claimant bears the burden of proof at the first four steps of the

---

[24]20 C.F.R. §§ 404.1520 and 416.920.

[25]*Id.*

[26]*Id.*

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

sequential analysis.[33]  Once the claimant has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and nonexertional limitations, able to maintain for a significant period of time.[34]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that she is unable to perform the alternative work.[35]

**B. Findings and Conclusions of the ALJ**

In this case, the ALJ reached his decision at step five of the decision-making process.  At step one, the ALJ determined that although Amilpas was employed for the first two quarters of 2006, Amilpas had not engaged in substantial gainful activity since her alleged on-set date.[36]  At step two, the ALJ determined that Amilpas has the following severe impairments: insulin dependent diabetes mellitus, hypertension, peripheral neuropathy, obesity, degenerative disc disease of lumbar spine, depression and anxiety.[37]  This appeal implicates Amilpas's diabetes and peripheral neuropathy.  Peripheral neuropathy is a diabetic neuropathy characterized by nerve damage in the arms and legs.  "Symptoms of peripheral neuropathy may include: numbness or

---

[33]*Leggett*, 67 F.3d at 564.

[34]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[35]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[36]SSA record, p. 12-13.  During her hearing, Amilpas testified that she worked as an airport-car-rental clerk for five months in 2006, before filing for disability benefits.  Supplemental SSA record, p. 664.  Amilpas stated in her application to proceed IFP, however, that she had last worked in 2003. Docket entry # 1.

[37]SSA record, p. 13.

insensitivity to pain or temperature; a tingling, burning, or prickling sensation; sharp pains or cramps; extreme sensitivity to touch, even light touch; [and] loss of balance and coordination."[38] At step three, the ALJ determined that Amilpas's impairments do not meet or medically equal a listed impairment.  At step four, the ALJ determined that Amilpas has the residual functional capacity to  perform sedentary exertional work with a sit-stand option, and with standing/walking limited to no more than 2 hours in an 8-hour day using a cane.[39]  Amilpas's allegation of error addresses this determination.  The ALJ also determined that Amilpas requires simple jobs and cannot perform high stress jobs.  The ALJ also determined that Amilpas cannot perform her past relevant work.[40]  At step five, the ALJ found that jobs exist in significant numbers in the national economy that Amilpas can perform.[41]

**C.  Amilpas's Allegation of Error**

Amilpas challenges the ALJ's treatment of expert testimony.  Dr. Ernest Gregory testified during Amilpas's hearing as a medical expert.  Amilpas maintains the ALJ failed to apply the appropriate legal standard in rejecting Dr. Gregory's opinion that she cannot perform even two hours of standing/walking due to her diabetic neuropathy.  She contends the ALJ made a legal error because he did not weigh the six factors set forth in 20 C.F.R. § 404.1527(d).

There are two reasons Amilpas's argument fails.  The first reason is that Dr. Gregory did

---

[38]Diabetic Neuropathies: The Nerve Damage of Diabetes, What is peripheral neuropathy?, *available at* http://diabetes.niddk.nih.gov/DM/pubs/neuropathies/#peripheralneuropathy.

[39]SSA record, p. 16.

[40]*Id*. at p. 19.

[41]*Id*.

not testify that Amilpas cannot perform even two hours of standing/walking.  At best, Dr.

Gregory's testimony is ambiguous about Amilpas's ability to stand/walk for two hours.  After

testifying about Amilpas's multiple impairments, Dr. Gregory made the following statements:

> This lady has a moderately severe diabetic neuropathy, which from a physical
> standpoint is the most important thing I see here.  This conceivably, with better
> control of her diabetes and medication, could possibly have some improvement.
> But I have one question about whether she could do even sedentary work, is the
> ability to stand on her feet even the two hours out of eight.  And I kind of doubt
> that, just from what I see on the chart.[42]

Because Dr. Gregory used the words "question" and "kind of doubt that," this testimony is

ambiguous because it can be interpreted differently.  It might mean that Dr. Gregory did not

believe that Amilpas can stand on her feet for two hours.  And it might mean that Dr. Gregory

did not know whether Amilpas can stand on her feet for two hours.

The testimony that followed did not clarify Dr. Gregory's opinion.  After the quoted

testimony, Dr. Gregory discussed the course of diabetic neuropathy, stating that if the neuropathy

was severe Amilpas would need a walker to ambulate.[43]  Amilpas was not using a walker.  She

testified that she had been prescribed a walker but found the walker too difficult to use.  At the

time of the hearing, Amilpas used a case.  The ALJ asked Dr. Gregory about the change from a

walker to a cane.  Dr. Gregory agreed with the ALJ that the change suggested a lesser degree of

leg problems.

Dr. Gregory's cross-examination did not clarify the ambiguity of the earlier testimony.

Amilpas's advocate asked Dr. Gregory about Amilpas being limited to sedentary work, but Dr.

---

[42]Supplemental SSA record, p. 688.

[43]*Id*. at 690.

Gregory answered with similar ambiguity, stating the following:

> Well, yeah, I've debated in my own mind about what she could – if she had a sit-stand option. In other words, the type of job she could work even standing and then sitting. I don't – and the depression, I think is magnifying everything else. I mean, that's normal, I mean people get depressed, everything hurts worse, they feel bad. And that should be better treated than what we see today.[44]

This testimony does not clear the ambiguity because Dr. Gregory did not state whether Amilpas can perform sedentary work with a stand/sit option. Whether Amilpas can perform sedentary work with a stand/sit option is important to this appeal because the ALJ determined that Amilpas retained the residual functional capacity to perform sedentary work with a stand/sit option.

The next testimony that might clarify whether Amilpas can perform sedentary work with a stand/sit option is Dr. Gregory's response to the ALJ's question about whether Amilpas's diabetes meets the listing for diabetes. Dr. Gregory answered as follows:

> Well, that's – you know, that's debatable. I would say that she's pretty close to it, I would think. The type of – this is a severe diabetic, the neuropathy. I haven't seen one like this in a long time. And so that's why I thought probably – it wouldn't affect anything – it affects her ability to function within a normal range. It would probably put it in that category. That combination of the psychiatric – I think it would be very difficult with that. All of her being treated, being sure that her blood pressure and her diabetes is properly treated, and then of course depression, might get her up to where, you know, she could do sedentary work. But I don't think she could stay with it. In other words, she got – you know, that's just my judgment from what I see here on the records.[45]

This testimony does not clarify the ambiguity of Dr. Gregory's earlier testimony because it does not address whether Amilpas can perform sedentary work with a sit/stand option, and because Dr. Gregory stated that he thought diabetic neuropathy "wouldn't affect anything." Dr. Gregory,

---

[44]*Id*. at p. 696.

[45]*Id*. at p. 697.

however, acknowledged that diabetic neuropathy affects Amilpas's ability to function within a normal range.

Perhaps the most clarifying testimony occurred at the conclusion of Dr. Gregory's testimony. The ALJ asked Dr. Gregory whether a stand-sit option made more sense for Amilpas than straight-seated, sedentary work. Dr. Gregory responded: "Well, I would – from the way this is – described her symptoms. She apparently has to change position frequently."[46] In retrospect, it would have been helpful if the ALJ had asked Dr. Gregory straight-out whether the medical evidence indicates Amilpas can perform sedentary work with a sit/stand option. The ALJ did not ask that question, but instead reconciled conflicts in the medical evidence. For example, about Dr. Gregory's opinion that Amilpas's diabetic neuropathy comes close to meeting listing 9.08, the ALJ wrote the following:

> [The undersigned notes that the objective medical evidence does not establish that the severity requirements of listing 9.08 are established for any consecutive 12 month period. (Claimant's sensory condition in particular is somewhat puzzling—see Ex. 4F/2 (some sensory loss [Jan. 10, 2007]); Ex. 13F/43 (same [Jan. 25, 2007]); Ex. 13F/8 (decreased protective sensation [May 22, 2007]); Ex. 25F/[4] (sensory decreased in left lower extremity [May 27, 2008]); Ex. 25F/5 (sensation intact to light touch [Apr. 29, 2008])].[47]

This observation is appropriate because listing 9.08 requires "Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station. . . ." Medical observations about sensory responses like the ones cited by the ALJ are important considerations

---

[46]*Id*. at p. 697.

[47]SSA record, p. 15. The quoted passage a typo—an erroneous exhibit number—corrected by alternation.

in determining whether a claimant meets listing 9.08 because peripheral neuropathy involves nerve damage in the arms and legs.  The ALJ's opinion reflects a thoughtful consideration of the medical evidence about nerve damage in Amilpas's legs.

The second reason Amilpas's argument fails is that SSR 96-6p does not require the ALJ to discuss each section 404.1527(d) factor in his opinion.[48]  The § 404.1527(d) factors are used to consider medical opinions.  The factors reflect an underlying policy that "the opinions of physicians . . . who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources."  The factors address the extent of ties between the source of a medical opinion and the claimant—the factors are: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors.

The ALJ did not explicitly address the factors in the unfavorable opinion; however, this appeal implicates only the third factor.  The other factors are not implicated because Dr. Gregory did not examine Amilpas (first factor), he has never treated Amilpas (second factor), his testimony was consistent in that it recognized the medical evidence (fourth factor), Dr. Gregory does not specialize in the implicated impairment (fifth factor), and because no other factor was identified (sixth factor).  As for the third factor—supportability—the ALJ discussed why Dr. Gregory's opinion that Amilpas's neuropathy met listing 9.08 is not supported by the record.  To the extent that a section 404.1527(d) factor was implicated, the ALJ discussed the factor.

---

[48]This regulation applies to applications for DIB.  The same factors are set forth in 20 C.F.R. § 416.927 for use in considering applications for SSI.

**Recommendation**: In response to Amilpas's complaint about the ALJ's treatment of Dr. Gregory's testimony, I cannot conclude that the ALJ made an error of law in considering the testimony because the testimony is ambiguous. Still, Dr. Gregory's testimony considered in totality suggests he agreed with the stand/sit option. To find a legal error, the district judge must view Dr. Gregory's testimony as an unambiguous opinion that Amilpas cannot perform sedentary work with a sit/stand option. Another reason I cannot conclude that the ALJ made a legal error is because the regulations do not require the ALJ to explicitly address each 404.1527(d) factor in an unfavorable decision.

As for whether substantial evidence supports the ALJ's determination about Amilpas's residual functional capacity, the record amply documents the presence of peripheral neuropathy, but it does not document the extent of Amilpas's ability to stand/walk. The ALJ made a thoughtful analysis of the record, and determined that Amilpas can perform sedentary work with a stand/sit option. The following evidence supports that determination: Four months after Amilpas filed for benefits, Dr. Bertram W. Roberts examined Amilpas. Dr. Roberts observed a loss of lower extremity reflexes, but also observed Amilpas ambulate to the examination room without difficulty.[49] Dr. Roberts questioned whether Amilpas tried as hard as she could on all exams.[50] Two months later, Dr. James Wright assessed Amilpas's physical residual functional capacity as consistent with light range of work. In particular, Dr. Wright opined that Amilpas can stand/walk about 6 hours in an 8-hour day.[51] The ALJ, however, after considering the effects

---

[49]SSA record, p. 345.

[50]*Id*. at p. 343.

[51]*Id*. at p. 417.

of Amilpas's obesity, determined that Amilpas was more appropriately limited to sedentary work.[52]

For these reasons, I recommend affirming the Commissioner's decision.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[53] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[54]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-

---

[52]*Id*. at p. 18.

[53]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[54]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

to proposed factual findings and legal conclusions accepted by the district court.[55]

      **SIGNED** on May 17, 2010.


                                *Nancy Stein Nowak*
                                NANCY STEIN NOWAK
                                UNITED STATES MAGISTRATE JUDGE

---

[55]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).