IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DEBORAH A. AMILPAS, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No.  SA-09-CV-389-XR |
| § | |
| MICHAEL J. ASTRUE, Commissioner, § | |
| Social Security Administration, § | |
| § | |
| *Defendants*. § | |

**ORDER**

On this date, the Court considered the Report and Recommendation filed by the Magistrate Judge (Docket Entry No. 15), and Plaintiff's objections thereto (Docket Entry No. 17), concerning Plaintiff's appeal of the Commissioner's decision to deny her Social Security disability benefits. After careful consideration, the Court will ACCEPT the Magistrate Judge's recommendation to AFFIRM the Commissioner's denial of benefits.

**I.  Introduction**

Plaintiff Deborah Amilpas seeks review of the administrative denial of her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  Amilpas asks the Court to reverse the decision and to render judgment in her favor.  In the alternative, she requests reversal of the decision and to remand the case for additional administrative proceedings.

**II.  Jurisdiction**

This Court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. § 405(g).

**III.  Factual and Procedural Background**

Amilpas fully exhausted her administrative remedies prior to filing this action in federal court. Amilpas filed an application for DIB and SSI benefits on November 9, 2006, alleging disability beginning on June 1, 2006. The Social Security Administration denied the application initially on June 2, 2007, and on reconsideration on October 1, 2007. Amilpas then asked for a hearing. A hearing was held before Administrative Law Judge Jonathan Blucher on July 1, 2008. The Administrative Law Judge (ALJ) issued a decision on August 18, 2008, concluding that Amilpas is not disabled within the meaning of the Social Security Act (the Act). The SSA Appeals Council concluded that no basis existed for review of the ALJ's decision. The ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).

Plaintiff filed a motion to proceed in forma pauperis in this matter on May 15, 2009, and she filed a complaint on May 15, 2009, against Commissioner of the Social Security Administration Michael J. Astrue, seeking to have the decision of the ALJ either reversed or remanded for further consideration. Defendant filed an answer on July 31, 2009, and the case was referred to Magistrate Judge Nancy S. Nowak for a report and recommendation. Both parties filed briefs. On May 17, 2010, Magistrate Judge Nowak issued a report and recommendation to this Court recommending the decision of the ALJ be affirmed.[1] Plaintiff filed objections to the report and recommendation on May 21, 2010.[2]

### IV. Applicable Legal Standards

**A. Legal Standard**

---

[1] Report & Recommendation, May 17, 2010 (Docket Entry No. 15).

[2] Plaintiff's Objections, May 21, 2010 (Docket Entry No. 17)

Where the Report and Recommendation has been objected to, the Court reviews the Magistrate Judge's recommended disposition *de novo*.[3] As to the portions of the report that are not objected to, the Court needs only to review those portions to determine whether they are clearly erroneous or contrary to law.[4]

**B. Standard of Review to Review Commissioner's Decision**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[5] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[7]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[8] In reviewing the Commissioner's findings, a court must carefully

---

[3] 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).

[4] 28 U.S.C. § 636(b)(1); *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir.), *cert. denied*, 492 U.S. 918, 109 S. Ct. 3243, 106 L. Ed.2d 590 (1989).

[5] *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[6] *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[7] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[8] *Martinez*, 64 F.3d at 173.

examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[9] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[10] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience.[11]

## C. Entitlement to Benefits

Every individual who is insured for disability benefits, has not reached retirement age, meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive disability insurance benefits.[12] Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive supplemental security income benefits.[13] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

---

[9] *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (the court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner).

[10] *Martinez*, 64 F.3d at 174.

[11] *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

[12] 42 U.S.C. § 423(a)(1).

[13] 42 U.S.C. § 1382(a)(1) & (2).

4

lasted or can be expected to last for a continuous period of not less than twelve months."[14] A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[15]

### D. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner require disability claims to be evaluated by the prescribed five-step process.[16] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[17]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[18] If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience. The second step involves determining whether the claimant's impairment is severe. If a claimant has no severe impairments, the claimant is deemed not disabled. In the third step, the ALJ compares the severe impairment with those on a list of specific impairments. If a claimant's impairment meets or equals a listed impairment, the claimant

---

[14] 42 U.S.C. § 1382c(a)(3)(A).

[15] 42 U.S.C. § 1382c(a)(3)(B).

[16] 20 C.F.R. §§ 404.1520 and 416.920.

[17] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[18] 20 C.F.R. §§ 404.1520 and 416.920.

is deemed disabled without considering his or her age, education, or work experience.

If the impairment is not on the list, the ALJ, in the fourth step, reviews the claimant's residual functional capacity (RFC) and the demands of her past work. The claimant's residual functional capacity is the most she can still do in a work setting given her physical and mental limitations. The assessment of the her RFC is based on all of the relevant evidence in the case record.[19] If the claimant is still able to do her past work according to her RFC, the claimant is not disabled. If the claimant cannot perform her past work, the ALJ moves to the fifth and final step of evaluating the claimant's ability to do other work, given her residual capacities, age, education, and work experience. If the claimant cannot do other work, she will be found disabled.

The claimant bears the burden of proof at the first four steps of the sequential analysis. Once the claimant has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform taking into account her previously determined residual functional capacity, but also able to maintain for a significant period of time.[20] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that she is unable to perform the alternative work.

### V.  Analysis

**A. Findings and Conclusions of the ALJ**

ALJ Blucher held a hearing on July 1, 2008, at which Plaintiff appeared and testified, as did Dr. Ernest Gregory, a medical expert, and Jeffrey Kiel, a vocational expert. The ALJ issued his

---

[19] *See* 20 C.F.R. § 404.1520(a).

[20] *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

decision on August 18, 2008, finding that Plaintiff was not disabled.[21] He first found that Amilpas had not engaged in substantial gainful activity since June 1, 2006, the alleged onset date.[22] At step two, the ALJ found that Amilpas had the following severe impairments: insulin dependent diabetes mellitus, hypertension, peripheral neuropathy[23], obesity, degenerative disc disease of the lumber spine, depression, and anxiety.[24]

At step three, the ALJ found that Amilpas did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[25] In reaching this conclusion, the ALJ examined the criteria for Ms. Amilpas's three most serious medical disorders: diabetes mellitus with neuropathy, severe hyptertension, or mental impairments significantly impacting the claimant's functioning.[26] The medical expert, Dr. Gregory, described the neuropathy as her most serious physical problem. The ALJ acknowledged Dr. Gregory's testimony in his report, but found that Amilpas did not demonstrate "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dextrous movements, or gait and station"[27] based on the overall medical evidence, including some contradictory reports by other doctors.

---

[21] Tr. at 10.

[22] Tr. at 12.

[23] Neuropathy is a problem in peripheral nerve function that causes pain, numbness, tingling and muscle weakness in various parts of the body. 20 C.F.R. § 404.P app. 1.

[24] Tr. at 13.

[25] Tr. at 15–16.

[26] *Id.*

[27] 20 C.F.R. § 404.P app. 1.

Regarding Amilpas's residual functional capacity, the ALJ concluded that she has the residual functional capacity to perform sedentary exertional work with standing/walking limited to no more than 2 hours in an 8 hour day using a cane; needs a sit/stand option; requires simple jobs and cannot perform high stress jobs.[28] The ALJ based this assessment of the claimant's RFC on the totality of the medical evidence, including prior assessments, the claimant's testimony, the records of the claimant's treating physician and other medical opinions.  In his testimony, Dr. Gregory expressed his doubts that the combination of Ms. Amilpas's medical problems, especially her neuropathy and depression, may prevent her from the capacity to stand/walk even for 2 hours.[29] Other medical opinions and evaluations included in the transcript, however, suggested that Ms. Amilpas might have the capacity to stand/walk for even greater lengths of time.[30] At step four, the ALJ concluded that Ms. Amilpas's limitations do not preclude her from all types of gainful employment, but those limitations do prevent her from performing any of her past relevant work.[31]

At step five, the ALJ found that there are a significant number of jobs existing in the national economy that Amilpas can perform, considering her age, education, work experience, and her residual functional capabilities, and thus she is not disabled.[32]

**B. Plaintiff's Assertions**

The Plaintiff's allegations and objections concern two main issues: (1) whether the ALJ

---

[28] Tr. at 16.

[29] Tr. at 688, 696–97.

[30] Tr. at 14.

[31] *Id.* at 17–18.

[32] *Id.* at 19.

failed to properly explain the consideration he gave to Medical Expert Gregory's testimony, and (2) whether the Magistrate Judge prejudicially characterized that testimony as ambiguous. First, Amilpas contends that the ALJ failed to apply the proper legal standards because he failed to sufficiently explain the weight he gave to the part of Dr. Gregory's testimony concerning Amilpas's standing/walking capabilities. Second, the claimant contends that the Magistrate Judge made a new finding of fact in the report and recommendation by characterizing Dr. Gregory's testimony as ambiguous. Ms. Amilpas asserts that Dr. Gregory instead testified that she simply cannot perform standing/walking for 2 hours in a workday.

**C. Whether the ALJ failed to explain the weight given to Medical Expert Gregory's testimony concerning Ms. Amilpas's ability to stand/walk.**

The Court agrees with Amilpas that the ALJ had a duty to explain the weight given to Dr. Gregory's testimony concerning the claimant's residual functional capacity to stand/walk for up to 2 hours. According to 20 C.F.R. § 404.1527, 20 C.F.R. § 416.927, Social Security Ruling 96-6p, and Social Security Ruling 96-5p, administrative law judges cannot ignore the opinion of a medical expert. Although the ALJ is not bound by a given medical opinion, he must still explain the weight given to each of those opinions in his decision.[33] Additionally, the Court agrees with Amilpas that Social Security Ruling 96-5P requires the ALJ to apply a number of factors from 20 C.F.R. §§ 404.1527(d) and 416.927(d) when weighing a medical expert's opinion. These factors are: (1) the examining relationship between the expert and the claimant, (2) the treatment relationship, (3) the supportability of the opinion in medical signs and laboratory findings, (4) the consistency of the

---

[33] Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review, Soc. Sec. Rul. 96-6P (1996).

9

opinion with the record as a whole, (5) the expert's specialization, and (6) any other factors influencing the credibility of the opinion.[34]

However, the ALJ did explain the weight he gave to the opinion of Dr. Gregory concerning Ms. Amilpas's standing/walking capacities. Medical Expert Gregory testified that he had a "question about whether she could do sedentary work" because he doubted her "ability to stand on her feet even the two hours out of the eight."[35] Amilpas contends that the ALJ did not explain or even mention this particular medical opinion.[36] This assertion is contrary to the record. In the ALJ's Decision, he mentions Dr. Gregory's opinion that:

> [I]f the claimant were to have a sit/stand option to allow her to change positions, it was unclear if claimant could sustain employment at the sedentary level. []Dr. Gregory gave weight to claimant's depression which . . . was a factor in his concern that the claimant might not be able to do sedentary work. . . .[37]

The ALJ is clearly referring to the exact quotation that Amilpas asserts was not mentioned.

The ALJ then went on to weigh this opinion against the other medical evidence to determine Amilpas's RFC. From the totality of this evidence, the ALJ concluded that Amilpas is unable to perform "work requiring extensive standing/walking." The ALJ did not explicitly restate Dr.

---

[34] 20 C.F.R. § 404.1527(d).

[35] Supp. Tr. at 687–88. Part of the difficulty with interpreting Dr. Gregory's testimony was an ungrammatical sentence discussing the opinion at issue. His sentence, according to the transcript, reads verbatim: "But I have one question about whether she could do sedentary work, is the ability to stand her feet even the two hours out of the eight. And I kind of doubt that, just from what I see here on the chart." *Id.*

[36] *See, e.g.,* Pl.'s Objection at 4–5 (stating that the ALJ did not address Gregory's testimony "at all"); Pl.'s Br. at 8.

[37] Tr. at 15.

Gregory's opinion when analyzing Ms. Amilpas's stand/walk limitation, nor did the ALJ offer a factor-by-factor explanation of the weight given to each portion of every medical opinion in the record. However, the ALJ is not required to go to these lengths in his explanation, as the Magistrate Judge pointed out.[38] The regulations do not require the ALJ to recite a litany of factors when rejecting a consulting expert's opinion.[39] In fact, the applicable regulations suggest the ALJ is supposed to consider all of the medical evidence and medical opinions together when determining a claimant's RFC.[40] As far as an individual medical opinion is concerned, the regulations "merely require that the ALJ and Appeals Council reflect that consideration was given to any medical consultant's opinion."[41]

The Decision reflects that this is exactly what ALJ Blucher did. He considered the doubts of Dr. Gregory,[42] and examined them alongside other evidence from laboratory reports and the examinations of consulting physicians Dr. Bertram Roberts and Dr. James Wright concerning Ms. Amilpas's walking capabilities and the severity of her neuropathy.[43] The ALJ placed greater weight

---

[38] Report and Recommendation at 12 ("the regulations do not require the ALJ to explicitly address each 404.1527(d) factor").

[39] *Rangel v. Astrue*, No. 7-08-CV-175-BD, 2010 WL 1286444, at *3 (N.D. Tex. Ap. 2, 2010) (citing 20 C.F.R. § 404.1527(d)(2)).

[40] 20 C.F.R. § 404.1520(e); Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, Soc. Sec. Rul. 96-5P (1996).

[41] *Gomez v. Barnhart*, No. SA-03-CA-1285-XR, 2004 WL 2512801, at *2 (W.D. Tex. Nov. 5, 2004).

[42] Tr. at 15 (ALJ explains the testimony and medical evidence offered by all parties side by side).

[43] Tr. at 17; Report and Recommendation at 13. Doctors Roberts and Wright were consulting physicians who examined Ms. Amilpas.

on the opinions of Dr. Roberts, who had examined Ms. Amilpas specifically to determine the extent of her mobility, than on her treating physician, Dr. Daniel Kellum.[44] He also took into account the report of Dr. Mrudula Rao, a psychologist, and numerous evidentiary exhibits in his findings to account for the limitations imposed by Amilpas's obesity and depression, which were the two other issues implicated by Dr. Gregory's testimony.[45] Specifically, the ALJ took account of the medical expert's opinion regarding Amilpas's ability to walk, of which Amilpas complains, when he decided on the sedentary range of her RFC.[46] This is the proper role of the ALJ who is ultimately responsible for final determinations and conclusions about a claimant's limitations, capabilities, and the credibility of any evidence and medical opinions.[47]

The above examples distinguish the case Amilpas cited, *Fangen v. Astrue*, from the case at hand. She cites *Fangen* as proof that the ALJ offered an insufficient explanation for Dr. Gregory's testimony. In *Fangen*, the Magistrate Judge remanded a case to the ALJ because the ALJ failed to explain the weight he gave an important piece of testimony. A consulting doctor had testified that the claimant was unable to consistently perform sedentary work based on the combination of all the claimant's impairments. The ALJ did not address that particular medical opinion concerning the combination of impairments, but only other testimony regarding whether the claimant's impairments

---

[44] Tr. at 17.

[45] Tr. at 18.

[46] Tr. 15, 17–18; *see also* Report & Recommendation at 13 (substantial evidence offered to support conclusions about Dr. Gregory's testimony such as the examinations of two other doctors); Br. in Support of the Comm'r's Decision at 6, November 2, 2009 (Docket Entry No. 14).

[47] *See e.g.* Soc. Sec. Rul. 96-5P at *2; *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *see also* Br. in Support at 6.

equaled listed impairments at Step 2 in the process.[48] Thus, the ALJ in *Fangen* ignored the separate medical opinion concerning whether the claimant could engage in non-sedentary work. Unlike *Fangen*, the ALJ here addressed the specific testimony that Amilpas claims was ignored and applied it to the proper step in the analysis concerning Ms. Amilpas's capacities.[49] Again, this reflects that due consideration was granted to Dr. Gregory's medical opinion.

**D. Whether the Magistrate Judge made a new finding of fact concerning Medical Expert Gregory's testimony which was clearly erroneous or legally mistaken.**

Amilpas asserts that the Magistrate Judge made a new finding of fact concerning Dr. Gregory's opinion, while the ALJ had made no credibility finding concerning that opinion. As explained above, the ALJ accounted for the medical expert's opinion. Thus, the Magistrate Judge did not make a new finding of fact. An ALJ's decision must stand on its own reasoning and explanations, as Amilpas correctly pointed out, and this decision does so.[50]

Even if the Magistrate Judge's characterization of the ALJ's explanation amounted to a new finding of fact, that characterization would not affect Amilpas's case or result in prejudice. A plaintiff must show both error and prejudice in order to achieve a reversal or remand of the ALJ's

---

[48] *Fangen v. Astrue*, No. SA-06-CV-1069-OG (NN), 2007 WL 1976585, at *7 (W.D. Tex. Jul. 2, 2007).

[49] The other cases cited by the claimant in her objections do not address the issue here: whether the ALJ offered a *sufficient* explanation for his rejection of a medical opinion. The ALJ here offered an explanation of the medical opinion in his report with substantial medical evidence to support his conclusions. In the cases offered by the claimant, one or both of those elements were missing. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) (ALJ failed to explain multiple proffered medical opinions about the effect of combined mental impairments); *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (ALJ ignored without explaining the treating physicians' reports about the claimant's ability to sit for six hours); *Butler v. Barnhart*, 99 Fed. App'x 559, 560 (5th Cir. 2004) (no substantial medical evidence supported ALJ's conclusions about claimant's work capacity).

[50] Pl.'s Objection at 6.

decision.[51] Proving prejudice requires showing that proper adherence to a regulation might have led to a different outcome.[52] Even if the Court accepts the plaintiff's description of the testimony rather than the Magistrate Judge's version, Amilpas cannot point to any evidence that a mischaracterization of the testimony might have caused the ALJ to reach any different conclusion regarding Dr. Gregory's opinion.  The ALJ provided ample substantiated evidence and explanation for why he concluded that the testimony was not determinative.

## Conclusion

For the foregoing reasons, the recommendation of the Magistrate Judge is ACCEPTED and the decision of the Commissioner to deny disability benefits is AFFIRMED.  Plaintiff Deborah Amilpas's request to have the Commissioner's decision reversed and/or remanded is denied.  The Clerk is instructed to close this case.

It is so ORDERED.

SIGNED this 12th day of July, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[51] *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

[52] *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).